**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| **MELYSSA ANNE MEFFORD,** | : | Case No. 2:24-cv-01374 |
| | : | |
| Plaintiff, | : | |
| | : | Judge |
| v. | : | |
| | : | |
| **INSTANT BRANDS LLC**, | : | |
| **INSTANT BRANDS, INC. and** | : | |
| **CORELLE BRANDS, LLC,** | : | |
| | : | |
| Defendants. | | |

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, **MELYSSA ANNE MEFFORD** (hereafter referred to as "Plaintiff"), by and through her undersigned counsel **JOHNSON BECKER, PLLC**, and **HERZFELD, SUETHOLZ, GASTEL, LENISKI AND WALL, PLLC,** hereby submits the following Complaint and Demand for Jury Trial against **INSTANT BRANDS, LLC, INSTANT BRANDS, INC.,** and **CORELLE BRANDS, LLC** (hereafter referred to as "Instant Brands Defendants" or "Defendants") alleges the following upon personal knowledge and belief, and investigation of counsel:

## NATURE OF THE ACTION

1. Instant Brands Defendants design, manufacture, market, import, distribute and sell a wide-range of consumer kitchen products, including the subject "Instant Pot Programmable Electric Pressure Cooker," which specifically includes the Model Number IP-DUO60 Plus (referred to hereafter as "pressure cooker(s)") that is at issue in this case.

2.      Defendants tout the "safety"[1] of its pressure cookers, and states that they cannot be opened while in use. Despite Defendants' claims of "safety," they designed, manufactured, marketed, imported, distributed and sold, both directly and through third-party retailers, a product that suffers from serious and dangerous defects. Said defects cause significant risk of bodily harm and injury to its consumers.

3.      Specifically, said defects manifest themselves when, despite Defendants' statements, the lid of the pressure cooker is removable with built-up pressure, heat and steam still inside the unit.  When the lid is removed under such circumstances, the pressure trapped within the unit causes the scalding hot contents to be projected from the unit and into the surrounding area, including onto the unsuspecting consumers, their families and other bystanders. The Plaintiff in this case was able to remove the lid while the pressure cooker retained pressure, causing her serious and substantial bodily injuries and damages.

4.      Defendants knew or should have known of these defects, but has nevertheless put profit ahead of safety by continuing to sell its pressure cookers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to recall the dangerously defective pressure cookers regardless of the risk of significant injuries to Plaintiff and consumers like her.

5.      Defendants ignored and/or concealed their knowledge of these defects in its pressure cookers from the Plaintiff in this case, as well as the general public, in order to continue generating a profit from the sale of said pressure cookers, demonstrating a callous, reckless, willful, and depraved indifference to the health, safety and welfare of Plaintiff and consumers like her.

---

[1]   *See*, e.g. Instant Pot Duo Plus User Manual, pg. 22.  A copy of the User Manual is attached hereto as "**Exhibit A**."

6. As a direct and proximate result of Defendants' conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, lost wages, physical pain, mental anguish, and diminished enjoyment of life.

## PARTIES

### *PLAINTIFF MELYSSA ANNE MEFFORD*

7. At all times relevant, Plaintiff was and is a citizen and resident of the City of Blacklick, County of Franklin, State of Ohio.

8. On or about August 16, 2021, Plaintiff suffered serious and substantial burn injuries as the direct and proximate result of the pressure cooker's lid being able to be rotated and opened while the pressure cooker was still under pressure, during the normal, directed use of the Pressure Cooker, allowing its scalding hot contents to be forcefully ejected from the pressure cooker and onto Plaintiff. The incident occurred as a result of the failure of the pressure cooker's supposed "safety mechanisms,"[2] which purport to keep the consumer safe while using the pressure cooker. In addition, the incident occurred as the result of Defendants' failure to redesign the pressure cooker, despite the existence of economical, safer alternative designs.

### *INSTANT BRANDS DEFENDANTS*

9. Defendants designed, manufactured, marketed, imported, distributed, and sold a variety of consumer kitchen products including pressure cookers, air fryers, and blenders, amongst others.

---

[2] *Id.* at pg. 5.

3

10.     Defendants boast that "cooking with Instant Brands is everyday magic,"[3] and that its products are "all designed to simplify the joys of home cooking, promote healthy lifestyles, and give you more time to enjoy great meals with the people you love."[4]

11.     Instant Brands, LLC is an Illinois limited liability company with its principal place of business at 3025 Highland Pkwy, Downers Grove, IL 60515.

12.     Upon information and belief, Instant Brands, Inc. is a Delaware Corporation with its principal place of business at 3025 Highland Pkwy, Downers Grove, IL 60515.

13.     Corelle Brands, LLC is an Illinois limited liability company with its principal place of business at 3025 Highland Pkwy, Downers Grove, IL 60515.

14.     On June 12, 2023 Defendants commenced a Chapter 11 proceeding.  See In re Instant Brands Acquisition Holdings Inc., et al. (Bankr. S.D. Tex. Case No. 23-90716) (the "Bankruptcy Case"). On February 23, 2024 the Bankruptcy Court issued a Findings of Fact, Conclusions of Law, and Order (I) Confirming the Joint Chapter 11 Plan of Reorganization of Instant Brands Acquisition Holdings Inc. and Its Debtor Affiliates and (II) Approving the Disclosure Statement on a Final Basis at Dkt. No. 1146. Exhibit A to the Order, Article VII, section L states the following:

> Nothing herein (including Articles XI.B and XI.G) shall preclude Holders of Product Liability Claims from (1) naming a Reorganized Debtor as a nominal Defendants in an action brought in respect of a Product Liability Claim, thereby allowing, and solely to the extent required to enable, the named Reorganized Debtor to tender the applicable Product Liability Claim to the applicable Third-Party Indemnitor under all available and applicable Third-Party Indemnifications (as set forth in Article II.D), if any, as will be adjudicated by the Bankruptcy Court in connection with Confirmation unless otherwise consensually settled or resolved, or (2) otherwise pursuing their Claims against Insurers under all available and applicable Insurance Contracts; provided, that none of the Reorganized Debtors shall have any obligation to participate or assist in any action brought in pursuit of any Product Liability Claims or have any liability with respect to

---

[3] *See* https://www.instanthome.com/about-us.
[4] *Id.*

4

any Product Liability Claims. For the avoidance of doubt, all liabilities of the Debtors, the Debtors' Estates, or the Reorganized Debtors for any Product Liability Claims shall be discharged on the Effective Date in accordance with the Plan. To ease the burdens on the Reorganized Debtors, all Holders of Product Liability Claims may use any discovery previously taken in connection with any previous Product Liability Claim against the Debtors, and both the Debtors and the Reorganized Debtors waive any prior protective orders to the extent necessary to effectuate this paragraph (however, any prior confidentiality designations are expressly preserved and shall remain in effect). To the extent that a Product Liability Claim is not satisfied by an Insurer or Third-Party Indemnitor, the Holder will be permitted to assert such Excess Product Liability Claim as a General Unsecured Claim (subject to prior compliance with the Bar Date Order). The Distribution Agent, the Litigation Trustee, or any Holder of a Product Liability Claim may seek estimation of any expected Excess Product Liability Claim, including for purposes of establishing an appropriate reserve in connection with any distributions from the Litigation Trust.

15.     This proceeding was initially commenced in the Bankruptcy Case by the filing of a Proof of Claim on October 6, 2023 and October 10, 2023 [Claim No. 0000010643 and 0000010494], respectively.  This action is being initiated now in this District Court solely to ensure satisfaction of the Plaintiff's applicable statute of limitation, but remains subject to the above cited Order in the Bankruptcy Case, and thus this action should be stayed until the conditions in paragraph 31(a) of such Order are satisfied.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

18.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants has sufficient minimum contacts with the State of Ohio and intentionally availed itself of the markets within Ohio through the promotion, sale, marketing, and distribution of its products.

**FACTUAL BACKGROUND**

19.     Defendants are engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing, and selling the pressure cookers at issue in this litigation.

20.     Defendants aggressively warrant, market, advertise, and sell the pressure cookers as "simple-to-use, versatile and convenient"[5] and repeatedly boasts about the pressure cookers' purported "proven safety features."[6]

21.     For instance, the Defendants claim that the pressure cookers include a "Safety Lid Lock" which purportedly automatically locks the lid when the unit is pressurized "to prevent opening the cooker."[7]

22.     To further propagate their message, Defendants have used, and continue to utilize, numerous media outlets including, but not limited to, infomercials, social media websites such as YouTube, and third-party retailers.  For example, the following can be found on Defendants' YouTube webpage entitled "Getting to Know Your Knew Instant Pot IP-DUO":

    a.  "The first thing you need to know about your IP-DUO is that ***you don't need to be afraid of it***, as many people are afraid of stovetop pressure cookers."[8]

    b.  "With 10 safety features built in, you can use your Instant Pot with confidence, ***knowing that it is not going to explode***."[9]

---

[5]  *See*  https://www.instanthome.com/product/instant-pot/duo-plus/6-quart-multi-use-pressure-cooker-v3.
[6] *Id.*
[7] *See* "10 Safety Mechanisms- DUO, DUO PLUS, LUX, NOVA PLUS AND VIVA," https://www.instanthome.com/support/instant/resources.
[8] https://www.youtube.com/watch?v=w1RKj9E8TY0 (video with a runtime of 11:26) at 0:42-0:46.
[9] *Id*. at 0:47 – 0:55.

    c.   "In addition, keep in mind that your Instant Pot operates at relatively low pressures of 11 to 12 psi or lower, depending on the pressure setting that you use."[10]

23.    In a similar video entitled "Introducing Instant Pot IP-DUO series electric pressure cooker," spokesperson Laura Pazzaglia, founder of the website "Hip Pressure Cooking"[11] boasts of the pressure cooker's "10 safety features," stating that this "new model detects the position of the lid" and "once the lid is locked, and the contents are under pressure, ***there's no way to open the pressure cooker***."[12]

24.    According to the Owner's Manual accompanying each individual unit sold, the pressure cookers purport to be designed with "10 proven safety mechanisms and patented technologies,"[13] misleading the consumer into believing that the pressure cookers are reasonably safe for its normal, intended use.

25.    By reason of the forgoing acts or omissions, the above-named Plaintiff used the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

26.    Plaintiff used the pressure cooker for its intended purpose of preparing meals for herself and/or her family and did so in a manner that was reasonable and foreseeable by the Defendants.

27.    However, the aforementioned pressure cooker was defectively and negligently designed and manufactured by the Defendants in that it failed to properly function as to prevent the lid from being rotated, opened, or removed with normal force while the unit remained

---

[10] *Id*. at 0:56 – 1:08.  This apparently suggest that even if the lid is opened while the unit is still pressurized, it will not harm you.

[11] *See* https://www.hippressurecooking.com/.

[12] https://www.youtube.com/watch?v=bVA2EqPf0s0 (video with a runtime of 8:30).

[13] *See* Instant Pot IP-DUO60/80 V2 Owner's Manual, pg. 4.

pressurized, during the ordinary, foreseeable and proper use of cooking food with the product; placing the Plaintiff, her family, and similar consumers in danger while using the pressure cookers.

28.     Defendants' pressure cookers possess defects that make them unreasonably dangerous for their intended use by consumers because the lid can be rotated and opened while the unit remains pressurized.

29.     Further, Defendants' representations about "safety" are not just misleading, they are flatly wrong, and put innocent consumers like Plaintiff directly in harm's way.

30.     Economically safer alternative designs were available that could have prevented the Pressure Cooker's lid from being rotated and opened while pressurized.

31.     Defendants knew or should have known that its pressure cookers possessed defects that pose a serious safety risk to Plaintiff and the public.  Nevertheless, Defendants continues to ignore and/or conceal their knowledge of the pressure cookers' defects from the general public and continues to generate a substantial profit from the sale of its pressure cookers, demonstrating a callous, reckless, willful, and depraved indifference to the health, safety, and welfare of Plaintiff and others like her.

32.     As a direct and proximate result of Defendants' intentional concealment of such defects, its failure to warn consumers of such defects, its negligent misrepresentations, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous pressure cooker, which resulted in significant and painful bodily injuries to Plaintiff.

33.     Consequently, the Plaintiff in this case seeks compensatory damages resulting from the use of Defendants' pressure cooker as described above, which has caused the Plaintiff to suffer

8

from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## CAUSES OF ACTION

### *CAUSES OF ACTION I – IV*
**DEFECTIVE MANUFACTURING/CONSTRUCTION
DEFECTIVE DESIGN/FORMULATION
DEFECTIVE WARNING/INSTRUCTION
DEFECTIVE DUE TO NONCONFORMITY WITH REPRESENTATION
STRICT LIABILITY
Pursuant to RC § 2307.71 *et seq.***

34.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

35.     At the time of Plaintiff's injuries, Defendants' pressure cookers, including the subject pressure cooker, were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

36.     The subject pressure cooker was in the same or substantially similar condition as when it left the possession of the Defendants.

37.     Plaintiff did not misuse or materially alter the subject pressure cooker.

38.     The subject pressure cooker did not perform as safely as an ordinary consumer would have expected it to perform when used in a reasonably foreseeable way.

39.     Defendants knew or should have known that consumers were able to remove the lid while the pressure cookers were still pressurized, Defendants continued to market (and continues to do so) its pressure cookers to the general public.

40.     The Plaintiff in this case reasonably relied on Defendants' representations that its pressure cookers, including the subject pressure cooker, were a safe and effective means of preparing meals.

41. Defendants' pressure cooker is defective in design or formulation. R.C. 2307.75.

42. Defendants' pressure cooker is defective due to inadequate warning or instruction. R.C. 2307.76.

43. Defendants' pressure cooker is defective for failing to conform to a representation made by the manufacturer. R.C. 2307.77.

44. Defendants is, or may be, liable as a supplier. R.C. 2307.78.

45. The defective condition of the subject pressure cooker includes, *inter alia,* the following:

a. The subject pressure cooker designed, manufactured, sold, and supplied by Defendants was defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

b. The seriousness of the potential burn injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

c. Defendants failed to properly market, design, manufacture, distribute, supply, and sell the subject pressure cooker, including pressure cookers similar or identical to the subject pressure cooker, despite having extensive knowledge that the aforementioned injuries could and did occur;

d. Defendants failed to use due care in designing and manufacturing the subject pressure cooker, including pressure cookers similar or identical to the subject pressure cooker to avoid the aforementioned risks to individuals;

e. Defendants failed to warn and place adequate warnings and instructions on the subject pressure cooker, including pressure cookers similar or identical to the subject pressure cooker;

f. Defendants failed to adequately test the subject pressure cooker, including pressure cookers similar or identical to the subject pressure cooker;

g. Upon information and belief, Defendants failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented the Plaintiff's injuries and damages; and

h. Upon information and belief, Defendants also failed to disclose material facts regarding the safety and efficacy of the subject pressure cooker, including pressure

cookers similar or identical to the subject pressure cooker, including information regarding their propensity to cause personal injuries.

46. Defendants' pressure cooker was defective in that at the time the subject pressure cooker left the control of Defendants, the foreseeable risks associated with its design or formulation exceeded the benefits associated with that design or formulation.

47. The subject pressure cooker did not conform to the standards of similar or identical pressure cookers due to its propensity for the lid to be removed while the unit remains under pressure.

48. The propensity for the lid to be removed while the unit remains under pressure during its normal, foreseeable use, was not an open and obvious risk.

49. The subject pressure cooker was in an unsafe, defective, and inherently dangerous condition which was unreasonably dangerous to its users and, in particular, Plaintiff.

50. The Defendants in this case had a duty to provide Plaintiff and other consumers with true and accurate information and warnings of any known dangers of the pressure cookers it marketed, distributed and sold.

51. The Defendants in this case knew or should have known, based on prior experience that its representations regarding its pressure cookers were false, and that it had a duty to disclose the dangers associated with their pressure cookers.

52. As a direct and proximate result of Defendants' defective pressure cooker, the Plaintiff in this case suffered significant, painful and permanent bodily injuries, physical pain, mental anguish, medical expenses, and overall diminished enjoyment of life. The Defendants in this case are liable for these losses.

## *CAUSE OF ACTION V*
### NEGLIGENCE

53.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

54.     Defendants owed a duty of reasonable care to design, manufacture, market, and sell non-defective pressure cookers that are reasonably safe for their intended uses by consumers, such as Plaintiff.

55.     Defendants failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of its pressure cookers in that Defendants knew or should have known that said pressure cookers, including the subject pressure cooker, created a high risk of unreasonable harm to the Plaintiff and consumers alike due to their propensity for the lid to be removed while the unit remains under pressure.

56.     The Defendants in this case were negligent in the design, manufacture, advertising, warning, marketing, and sale of their pressure cookers, including the subject pressure cooker in that, *inter alia*, they:

a. Failed to properly market, design, manufacture, distribute, supply, and sell the subject pressure cooker, including pressure cookers similar or identical to the subject pressure cooker, despite having extensive knowledge that the aforementioned injuries could and did occur;

b. Failed to warn and place adequate warnings and instructions on the subject pressure cooker, including pressure cookers similar or identical to the subject pressure cooker;

c. Failed to adequately test the subject pressure cooker, including pressure cookers similar or identical to the subject pressure cooker;

d. Failed to use due care in designing and manufacturing the subject pressure cooker, including pressure cookers similar or identical to the subject pressure cooker to avoid the aforementioned risks to individuals;

12

e. Placed an unsafe product into the stream of commerce; and

f. Were otherwise careless or negligent.

57. As a direct and proximate result of Defendants' negligence, the Plaintiff in this case suffered significant, painful and permanent bodily injuries, physical pain, mental anguish, medical expenses, and overall diminished enjoyment of life. The Defendants in this case are liable for these losses.

### *CAUSE OF ACTION VI*
### BREACH OF IMPLIED WARRANTIES

58. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

59. Defendants manufactured, supplied, and sold their pressure cookers, including the subject pressure cooker, with an implied warranty that they were fit for the particular purpose of cooking quickly, efficiently and safely preparing meals.

60. Members of the consuming public, including consumers such as the Plaintiff, were the intended third-party beneficiaries of these warranties.

61. Defendants' pressure cookers, including the subject pressure cooker, were not fit for the particular purpose as a safe means of cooking meals, due to the unreasonable risks of bodily injury associated with their use.

62. Furthermore, Defendants' pressure cookers, including the subject pressure cooker, were not merchantable and fit for their ordinary purpose, because they have the propensity for the lid to be removed while the unit remains under pressure.

63.     The Plaintiff in this case reasonably relied on Defendants' representations that its pressure cookers, including the subject pressure cooker, were fit for the particular purpose of cooking quickly, efficiently, and safely.

64.     Additionally, Plaintiff used the subject pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking quickly, efficiently and safely.

65.     As a direct and proximate result of Defendants' breach of the aforementioned warranties, the Plaintiff in this case suffered significant, painful and permanent bodily injuries, physical pain, mental anguish, medical expenses and overall diminished enjoyment of life. The Defendants in this case are liable for these losses.

## JURY TRIAL DEMANDED

Plaintiff demands that all issues of fact of this case be tried to a properly impaneled jury to the extent permitted under the law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment against Defendants as follows:

A.      For an award of compensatory damages, including damages against Defendants and each of them for pain and suffering, medical and hospital expenses, loss of income, permanent disability, and other damages according to proof at trial in excess of $75,000;

B.      For reasonable attorneys' fees and costs;

C.      For pre-judgment interest;

E.      Restitution, disgorgement of profits, and other equitable relief; and

F.      For such further relief as this Court deems necessary, just, equitable and proper.

14

Dated: March 25, 2024                         Respectfully Submitted,

**HERZFELD, SUETHOLZ, GASTEL, LENISKI AND WALL, PLLC**

*/s/ Alyson Steele Beridon*
Alyson Steele Beridon (Bar #87496)
600 Vine Street, Suite 2720
Cincinnati, OH 45202
Ph: 513-381-2224
Fax: 615-994-8625
alyson@hsglawgroup.com

**JOHNSON BECKER, PLLC**

Michael K. Johnson, Esq.* (MN #0258696)
Kenneth W. Pearson, Esq.* (MN #016088X)
Adam J. Kress, Esq.* (MN #0397289)
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1800 / (612) 436-1801 (f)
mjohnson@johnsonbecker.com
kpearson@johnsonbecker.com
akress@johnsonbecker.com

***Attorneys for Plaintiff***
***\*Pro Hac Vice forthcoming***

15